UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Darren Koski, Jeffrey Yunis, John Commins,
Nicole Suri, Caroline Canales, Maria
Alonso, individually, and on behalf of                    Case No:
others similarly situated,

      Plaintiffs,

vs.

CARRIER CORPORATION, RHEEM
MANUFACTURING COMPANY,
NORTEK GLOBAL HVAC,
UNDERWRITERS LABORATORIES, LLC,
UNDERWRITERS LABORATORIES,
INC., INTERTEK TESTING SERVICES
NA, INC., TUTCO, INC., WARREN
TECHNOLOGY INC., NOVA COIL, INC.,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

PLAINTIFFS, Darren Koski (Koski), Jeffrey Yunis (Yunis), John Commins (Commins), Nicole Suri (Suri), Caroline Canales (Canales), Maria Alonso (Alonso), the "Plaintiffs", on their own behalf and on behalf of others similarly situated ((the "Classes" (defined below)), bring this Class Action against Carrier Corporation, Rheem Manufacturing Company, Nortek Global HVAC, LLC,  Underwriters Laboratories, LLC, Underwriters Laboratories, Inc., and Intertek Testing Services NA, Inc., Tutco Inc., Warren Technology, Inc. and Nova Coil, Inc. and in support thereof, Plaintiffs respectfully allege the following:

## NATURE OF THE ACTION

1.      Unitary electric heaters are installed in fixed electric air conditioning equipment – central air conditioners and heat pumps and packaged terminal air conditioners (PTAC) and heat pumps (PTHP) (collectively "HVAC equipment), and are an integral and essential component of the system.  Electric unitary heaters that do not incorporate fail-safe electric power cutoff devices present a serious risk of fire, and are therefore defective and unreasonably dangerous, rendering such air conditioning systems unfit for their intended use.

2.      Defendants Carrier, Rheem, and Nortek (collectively the "HVAC Manufacturer Defendants") are each large manufacturers of heating, ventilation and air conditioning products (HVAC) for use in the United States.  Each of these Defendants manufactures and sells consumer HVAC equipment for residential use under their own trade name and under various other trade names.

3.      Defendants Tutco, Warren and Nova Coil (collectively the "Heater Manufacturer Defendants") are each large manufacturers of electric unitary heaters. Each of these Defendants manufacture and sell consumer fixed electric air conditioning equipment for residential use under their own trade name and under various other trade names.

4.      HVAC equipment incorporates unitary heaters as an integral and essential part of the air conditioning system.  The heating elements are positioned in the airflow supply between the fan and the ducting, and transfer heat to the supply air as it passes.

5.      Unitary heaters are designed to warm the air, but not overheat the air, as it is forced over the heating elements.  Heating elements can reach hazardous temperatures (greater than 2000°F) and ignite fires during certain foreseeable and intended conditions of operation, such as, inter alia: inadequate airflow, excessive supply voltage or short circuits from physical damage.

6.     The *non-self-resetting thermal cutoff* is a safety device (sometimes referred to as a thermal fuse) that is designed to de-energize the heating elements to prevent them from reaching hazardous temperatures and catching fire.  Incorporation of this safety device is feasible, reliable and critically necessary to eliminate or substantially eliminate the foreseeable risk of fires caused by overheated HVAC units.

7.     The national safety standards specifically require that unitary electric heaters incorporate non-self-resetting thermal cutoffs ("Fail-Safe Cutoffs") to de-energize the heating elements before hazardous temperatures are reached to prevent the foreseeable risks of overheat fires (UL1995 & UL60335-2-40).

8.     Defendants Underwriters Laboratories and Intertek (collectively the "Certification Lab Defendants") are nationally recognized certification laboratories that are accredited to certify product compliance with applicable safety standards.

9.     The HVAC and Heater Manufacturer Defendants have each retained and compensated the Certification Lab Defendants to certify that the heaters or air conditioning equipment incorporating the heaters are fully compliant with the applicable safety standards. The Certification Lab Defendants have improperly and falsely certified the subject heaters and air conditioning equipment as fully compliant with the applicable safety standards, despite the fact that they do not incorporate Fail-Safe Cutoffs in direct violation of the critical safety requirements.  The Certification Lab Defendants have issued and authorized the certification "labels" to be affixed to these non-compliant products by the HVAC and Heater Manufacturer Defendants.

10.    The product certification labels are intended to be a direct representation to the Plaintiffs and others similarly situated verifying compliance and assuring minimum safety of the product and fitness for intended use. Defendants herein – HVAC equipment Manufacturers,

Heater Manufacturers and Certification Labs – affixed product certification labels upon the subject heaters and HVAC equipment that did not incorporate the critical Fail-Safe Cutoffs, materially misrepresenting and falsely assuring Plaintiffs and others similarly situated that the products were compliant with all applicable safety standards.

11.     The requirement for Fail-Safe Cutoffs on heaters and HVAC equipment containing such heaters is well known within the industry and these Defendants have knowledge of the non-compliance and unreasonable fire dangers associated with heaters that do not incorporate Fail-Safe Cutoffs and HVAC equipment containing such defective heaters. Notwithstanding, these Defendants affirmatively misrepresent the safety and conceal the dangers and unfitness of the subject heaters and HVAC equipment in which such heaters are contained.

12.     These Defendants have engaged in the sale and distribution of defective and unreasonably dangerous heaters and HVAC equipment by deceit and false pretense, for profit. Plaintiffs and the Classes were damaged because the HVAC equipment and heaters they purchased did not comply with the safety standards as represented, such products were defective, unreasonably dangerous and unfit for the intended use, and less valuable than the heaters or HVAC equipment would have been had these Defendants' representations been true.  Plaintiffs paid a higher price for the HVAC equipment or heaters than they would have paid had these Defendants accurately represented that such heaters or equipment were not compliant with the applicable safety standards, that such products were defective and not safe for the intended use or that any and every operation of the HVAC equipment or heaters without the Fail-Safe Cutoffs would expose persons and property to unreasonable dangers from fire.

## THE DEFENDANTS

13.     Defendant Carrier Corporation ("CARRIER") is a Delaware corporation with its principal place of business in Jupiter, Florida, and is licensed to do business and does business in the state of Florida. CARRIER manufactures and/or sells unitary heaters and HVAC incorporating unitary heaters under various brand names, including: Carrier, International Comfort Products (ICP), Bryant, Payne, Day & Night, Grandaire, Comfortmaker, Comfortmaster, Weathermaster, Weathermaker and Arcoaire.  CARRIER has placed the subject heaters and HVAC equipment in the stream of commerce intended for and distributed in the state of Florida.

14.     Defendant Rheem Manufacturing Company ("RHEEM") is a Delaware Corporation with its principal place of business in Atlanta, Georgia.  RHEEM manufactures and/or sells unitary heaters and HVAC incorporating unitary heaters under various brand names, including: Rheem and Ruud. RHEEM has placed the subject heaters and HVAC equipment in the stream of commerce intended for and distributed in many different states in the United States, and specifically in the state of Florida.

15.     Defendant Nortek Global HVAC LLC ("NORTEK") is a Delaware Corporation with its principal place of business in O'Fallon, Missouri.  NORTEK manufactures and/or sells unitary heaters and HVAC incorporating unitary heaters under various brand names, including: Nortek, Nordyne, Broan, Maytag, Nutone, Frigidaire, Gibson, Mammoth, Miller, Intertherm, and Westinghouse. NORTEK has placed the subject heaters and HVAC equipment in the stream of commerce intended for and distributed in many different states in the United States, and specifically in the state of Florida.

16.     Defendant Underwriters Laboratories LLC ("UL LLC") is a foreign limited liability company organized in Delaware with its principal place of business in Northbrook, Illinois, and is licensed to do business and does business in the state of Florida. UL LLC is a product certification laboratory that certifies product safety compliance.  UL LLC affixed its certification mark of compliance upon products, including the subject heaters and HVAC equipment to be placed in the stream of commerce intended for and distributed in many different states in the United States, specifically in the state of Florida, and with the knowledge and expectation that Florida citizens would rely upon UL LLC's certification labels representing such products' safety compliance.

17.     Defendant Underwriters Laboratories Inc. ("UL INC") is an Illinois corporation with its principal place of business in Northbrook, Illinois, and is licensed to do business and does business in the state of Florida.  UL INC is the parent corporation of UL LLC, a wholly owned subsidiary, and has acted as a product certification laboratory, prior to or along with UL LLC, that certifies product safety compliance. UL INC affixed its certification label of compliance upon the subject heaters and HVAC equipment to be placed in the stream of commerce intended for and distributed in many different states in the United States, specifically in the state of Florida, and with the knowledge and expectation that Florida citizens would rely upon UL INC's certification labels representing such products' safety compliance.

18.     Defendant Intertek Testing Services NA, Inc. ("INTERTEK") is a New York corporation with its principal place of business in Cortland, New York, and is licensed to do business and does business in the state of Florida.  Intertek is a product certification laboratory that certifies product safety compliance.  Intertek affixed its certification label of compliance upon products, including the subject Heaters and HVAC equipment to be placed in the stream of commerce intended for and distributed in many different states in the United States, specifically

in the state of Florida, and with the knowledge and expectation that Florida citizens would rely upon Intertek's certification labels representing such products' safety compliance.

19. Defendant Tutco, Inc. ("TUTCO") is a Pennsylvania Corporation with its principal place of business in Cookeville, Tennessee. TUTCO manufactures and/or sells unitary heaters. TUTCO has placed the subject heaters in the stream of commerce intended for and distributed in many different states in the United States, and specifically in the state of Florida.

20. Defendant Warren Technology, Inc. ("WARREN") is a Florida Corporation with its principal place of business in Hialeah, Florida. WARREN manufactures and/or sells unitary heaters. WARREN has placed the subject heaters in the stream of commerce intended for and distributed in many different states in the United States, and specifically in the state of Florida.

21. Defendant Nova Coil, Inc. ("NOVA") is a Delaware corporation with its principal place of business in Franklin, Wisconsin. NOVA manufactures and/or sells unitary heaters. NOVA has placed the subject heaters in the stream of commerce intended for and distributed in many different states in the United States, and specifically in the state of Florida.

## JURISDICTION AND VENUE

22. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(d) because (1) this action is a "class action," which contains class allegations and expressly seeks certification of a proposed class of individuals; (2) the putative Classes each consist of more than 100 proposed class members; (3) at least one class member is a citizen of a state different from the Defendants; and (4) the aggregate amount in controversy by the claims of Plaintiffs and the putative Classes exceeds $5,000,000.00, exclusive of interest and costs.

23. This Court also has personal jurisdiction over each of the named Defendants because they are licensed in Florida, have offices in Florida, advertise and market its products in

Florida, disseminate the product representations and deceptions throughout Florida, distribute their products including the subject products to and within the state of Florida, and do business in and derive substantial income from the sale of products in the state of Florida,

24.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because the actions and omissions that are the subject of this complaint took place in substantial part in Florida and each of these Defendants is subject to personal jurisdiction in this District.  Further, venue is appropriate for the claims arising out of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), F.S. §§501.201, *et seq.*, because the statute applies to any company engaging in any of the activities regulated by the laws of the state of Florida.

## CLASS ACTION ALLEGATIONS

25.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4) on behalf of the following nationwide consumer classes (the "Nationwide Classes").

> All persons residing in the United States who own or purchased a central air conditioner, air handler or packaged terminal air conditioner (PTAC) that was manufactured or sold by CARRIER, RHEEM, or NORTEK that contains a heater that does not incorporate Fail-Safe Cutoffs and has a product certification label from UNDERWRITERS LABORATORIES or INTERTEK.

> All persons residing in the United States who purchased a unitary electric heater that was manufactured or sold by CARRIER, RHEEM, NORTEK, TUTCO, WARREN or NOVA COIL that does not incorporate Fail-Safe Cutoffs that has a product certification label from UNDERWRITERS LABORATORIES or INTERTEK.

26.     Plaintiff also seeks to represent subclasses defined as all members of the Nationwide Classes who reside in Florida ("the Florida Subclasses").

27.     The Nationwide Classes and the Florida Subclasses are together referred to in this complaint as the "Classes."

28.     Subject to additional information obtained through further investigation and discovery, the foregoing Classes may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the Classes is any entity in which Defendants had a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assigns or successors.

29.     Numerosity: Members of each of the Classes are so numerous that joinder is impracticable.  While the exact number of Class members is unknown to Plaintiff, it is believed that each Nationwide Class is comprised of at least tens of thousands of members geographically disbursed throughout the United States and that each Florida Subclasses is comprised of at least thousands of members geographically disbursed throughout the state of Florida.

30.     Commonality: Common questions of law and fact exist as to all members of the Classes and Subclasses.  The critical questions of law and fact common to the Classes and Subclasses that will materially advance the litigation is whether the unitary heaters that do not incorporate Fail-Safe Cutoffs, and the HVAC equipment in which they are installed, are defective; whether the improper and false certifications of unitary heaters that do not incorporate Fail-Safe Cutoffs, or HVAC equipment in which they were installed, were material misrepresentations; whether the unitary heaters that do not incorporate Fail-Safe Cutoffs, and the HVAC equipment in which such are installed, are not of a good and merchantable quality and/or do not perform according to the reasonable expectations of consumers; and whether Defendants deceived consumers under the common law and statutory consumer protection laws identified herein.   The resolution of these common questions of law and fact will, in turn, drive the resolution of the litigation.

31.     Additional common legal and factual questions that will also drive the resolution of the litigation include, but are not limited to:

a.  Whether Defendants' HVAC equipment containing heaters that do dot incorporate Fail-Safe Cutoffs are defectively designed and/or manufactured;

b.  Whether Defendants' unitary heaters that do not incorporate Fail-Safe Cutoffs are defectively designed and/or manufactured;

c.  Whether Defendants' knew or reasonably should have known about the defects prior to sale or distribution of such products to the Plaintiff and Classes;

d.  Whether Defendants concealed from or failed to disclose the defect to Plaintiffs and the Classes;

e.  Whether Defendants made material misrepresentations to the Plaintiffs and Classes;

f.  Whether Defendants breached the express warranties under applicable state law;

g.  Whether Defendants breached the implied warranty of merchantability under applicable state law;

h.  Whether Defendants breached the implied warranty of fitness for a particular purpose under applicable state law;

i.  Whether Defendants were unjustly enriched by receiving monies in exchange for heaters and HVAC equipment that were defective;

j.  Whether Defendants should be ordered to disgorge all or part of the ill-gotten profits received from the sale of defective unitary heaters and HVAC equipment;

k.  Whether Plaintiff and Classes are entitled to damages, including compensatory, exemplary, and statutory damages; and

l.   Whether Defendants should be enjoined from selling and marketing the defective unitary heaters and HVAC equipment.

32.   <u>Typicality</u>: Plaintiff's claims are typical of the members of the Classes as all such claims arise out of Defendants' conduct in designing, manufacturing, warranting, marketing and selling the defective unitary heaters and HVAC equipment, and Defendants' conduct in misrepresenting and concealing the defect and dangers from the Plaintiff and Classes

33.   <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Classes because Plaintiff has no interests antagonistic to, or in conflict with, the Classes that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation including but not limited to consumer class actions.

34.   The class action mechanism is superior to other available means for the fair and efficient adjudication of the claims of all Class members. Besides the predominance of questions common to all Class members, individual Class members lack resources to undertake the burden and expense of individual prosecution of these claims against the large corporate Defendants herein, especially in comparison with the maximum individual recovery to which each class member would be entitled.   Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.   Individualized prosecution also presents a potential of inconsistent or contradictory judgments.   In contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single Court on the issue of the Defendants' liability.

**THE CLASS PLAINTIFFS**

35.     Each of the Class Plaintiffs own, or purchased for the residences, air handlers which contain HVAC heater units manufactured, distributed, and sold within the state of Florida. The Plaintiffs' HVAC equipment, including the unitary heaters, were manufactured, designed, distributed, sold and certified as safe and compliant with national safety standards by the Defendants herein.  In fact, the unitary heaters within Plaintiffs' residences are not compliant with national safety standards as is alleged herein, and such non-compliance was either known or should have been known to the Defendants.

36.     Had the Plaintiffs known of the dangers and risks posed by the non-compliant unitary heaters, Plaintiff would not have purchased the HVAC equipment, or would not have accepted the presence of the dangerous, non-compliant HVAC equipment within their homes.

37.     As a result of the foregoing, the Plaintiffs have been damaged because they purchased or accepted unsafe, non-complaint HVAC equipment in their residences which presented a risk of harm, and deprived the Plaintiffs of the benefit of the bargain to which they agreed when the HVAC units, or residences, were purchased.

**FACTS COMMON TO THE CLASS/CLAIMS**

38.     Upon information and belief, Defendants have each sold, directly or indirectly (through dealers and other retailer outlets), thousands of unitary heaters that do not incorporate non-self-resetting thermal cutoffs and HVAC equipment containing such unprotected heaters in the state of Florida, to homeowners, developers, contractors or subcontractors.

39.     Carrier, Rheem, Nortek, Tutco, Warren and Nova, each has many authorized dealers and installers of their heaters and HVAC equipment in Florida.

40.     Defendants   designed,   manufactured   or   branded,   marketed,   advertised,

affirmatively represented, product certified and sold their unitary heaters and HVAC equipment containing such unprotected heaters, through distributors, to the Plaintiffs and Classes and their builders, contractors, subcontractors or agents.  Defendants' heaters and HVAC equipment was installed in Class members' structures.

41.     Defendants' heaters that do not incorporate Fail-Safe Cutoffs and HVAC equipment containing such unprotected heaters are defective because they do not incorporate necessary and required safeguards and they are unreasonably dangerous because, as a result of the above described defect, they needlessly expose persons and property, including Plaintiffs and Classes, to foreseeable overheat fire risks during ordinary and intended use that can and should be avoided.

42.     Fail-Safe Cutoffs – non-self-resetting thermal cutoffs – are specifically required for heaters and HVAC equipment containing such heaters by the applicable safety standards for the United States (UL1995 and UL60335-2-40).

43.     The necessity and the specific requirement for the incorporation of Fail-Safe Cutoffs is well known within the industry and each of the Defendants have knew or should have known of the non-compliance, defect and unreasonable fire dangers associated with heaters that do not incorporate Fail-Safe Cutoffs and HVAC equipment containing such defective heaters. Notwithstanding, these Defendants affirmatively misrepresented the safety and concealed the dangers and unfitness of the subject heaters and HVAC equipment in which such heaters are contained.

44.     The HVAC and Heater Manufacturer Defendants have each retained and compensated the Certification Lab Defendants to certify that the heaters or air conditioning equipment incorporating the heaters are fully compliant with the applicable safety standards. The Certification Lab Defendants have improperly and falsely certified the subject heaters and

HVAC equipment that do not incorporate Fail-Safe Cutoffs as compliant with the safety standards, despite the direct violation of the critical safety requirements, and have issued and authorized product safety certification labels to be affixed to these products by the HVAC and Heater Manufacturer Defendants.

45.     The certification labels are intended to be a direct representation to these Plaintiffs and others verifying compliance and assuring minimum safety of the product and fitness for intended use. The Defendants affixed product certification labels upon the subject heaters and HVAC equipment that does not incorporate the critical Fail-Safe Cutoffs, materially misrepresenting and falsely assuring Plaintiffs and others that the products were compliant with all applicable safety standards and fit for their intended use.

46.     The Certification Lab Defendants specifically and expressly represented and warranted to the Plaintiff and Classes that the subject product was fully compliant with all safety standards despite the fact it knew or should have known at the time of such certification and continuing authority to issue such certification labels that its representation was improper and false and that such products were in direct violation of critical safety requirements.

47.     The HVAC and Heater Manufacturer Defendants expressly and impliedly warranted via the product safety compliance certification labels, manuals, website, brochures and/or specifications that Defendants' heaters and HVAC equipment is compliant with all safety standards and fit for the ordinary and intended use of such products.

48.     In the product certification labels affixed to the heaters and HVAC equipment, Defendants Carrier, Rheem, Nortek, Tutco, Warren, Nova and Underwriters Laboratories and Intertek affirmatively and falsely represented that the HVAC equipment was in compliance with applicable national safety standards as alleged herein.

49.     Contrary to its representations, the Defendants' heaters without Fail-Safe Cutoffs and HVAC equipment containing such unprotected heaters are not of merchantable quality, nor fit for their intended use, and are defective and unreasonably dangerous.

50.     The representations made by these Defendants were material and were false or misleading and Defendants knew or should have known at the time they made them that they were false and misleading. The Plaintiff and Classes would not have purchased Defendants products had they known that the representations were false and that the products were not compliant with the applicable safety standards.

51.     The bargaining power between Plaintiff and Class members and Florida Subclass members on the one hand and Defendants on the other hand was grossly unequal and any limitations on the warranty are substantially one-sided, making any limitations unconscionable. Further, the defects and dangers are latent and their existence concealed by the Defendants, preventing the Plaintiffs and Classes from discovery of such.

52.     The subject HVAC equipment – central air conditioners and heat pumps and packaged terminal air conditioners (PTAC) and heat pumps (PTHP) – incorporate unitary heaters as an integral and essential part of the air conditioning system.  The heating elements are positioned in the supply airflow between the fan and the ducting and transfer heat to the supply air as it passes.

53.     Electric unitary heaters are designed to warm the air but not overheat the air as it is forced by the heating elements.  Heating elements can reach hazardous temperatures (greater than 2000□) and ignite fires due to, inter alia, inadequate airflow, excessive supply voltage or short circuits from physical damage.

54.     The *non-self-resetting thermal cutoff* ("Fail-Safe Cutoff") is a safety device that is designed to de-energize the heating elements to prevent them from reaching hazardous

temperatures and catching fire.   Incorporation of this safety device is feasible, reliable and critically necessary to eliminate or substantially reduce the risk foreseeable and anticipated overheat fires.

55.     The national safety standards specifically require that unitary electric heaters incorporate non-self-resetting thermal cutoffs ("Fail-Safe Cutoffs") to de-energize the heating elements before hazardous temperatures are reached to prevent the foreseeable and avoidable risks of overheat fires (UL1995 & UL60335-2-40).

56.     Electric unitary heaters that do not incorporate the necessary and specifically required Fail-Safe Cutoffs and HVAC equipment incorporating such unprotected heaters are defective and render the heater and HVAC equipment in which they are incorporated defective and unfit for the ordinary purpose for which they are used because they expose persons and property to unreasonable danger from associated overheat fires caused by the defective products.

57.     The Defendants' defective heaters and HVAC equipment caused the Plaintiff and Classes to suffer damages, including, but not limited to, the difference in the value of Defendants product as represented and warranted and the same product that is protected against overheat fires with non-self-resetting thermal cutoffs.  The defective products that omitted the necessary and required Fail-Safe Cutoffs to prevent overheat fires were the direct, proximate and foreseeable cause of damages incurred by Plaintiff and Class members.

58.     Had the Defendants' products been properly manufactured or free from design defects, the Plaintiff and Classes would not have suffered the damages complained of herein.

59.     Had the Defendants' representations about the safety of the products been truthful and accurate, the Plaintiff and Classes would not have suffered the damages complained of herein.

60.     Had the products not had the improper and false product certification "labels" representing compliance with the safety standards, the Plaintiff and Classes would not have suffered the damages complained of herein.


**TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION**

61.     Plaintiffs are within the applicable statute of limitations for the claims presented because Plaintiff did not discover the defect, and could not reasonably have discovered the defect prior to September, 2016 when the deception and defect were discovered.  Further, Defendants and its agents affirmatively misrepresented the safety compliance and existence of the defect and dangers.

62.     Defendants are estopped from relying upon any statutes of limitation by virtue of its acts of affirmative misrepresentation and fraudulent concealment, which include concealment from the Plaintiffs and Classes that the subject Heaters and HVAC equipment were defective and unreasonably dangerous, while continuing to market their products as suitable for ordinary use.

63.     Although Defendants were aware that the subject Heaters and HVAC equipment were defective and unreasonably dangerous, they took no steps to warn the Plaintiffs and Classes of the defect or dangers while they continued to sell their defective products.


**COUNT 1**
**Express Warranty**
**(On Behalf of Plaintiffs, the Nationwide Classes, and Florida Subclasses)**

64.     Plaintiffs re-allege and incorporate each and every allegation of paragraphs 1 through 63 set forth above as if fully written herein.

65.     Plaintiffs bring this claim on behalf of the Nationwide Classes, or, in the alternative, on behalf of the Florida subclasses.

66.     The HVAC and Heater Manufacturer Defendants and the Certification Lab Defendants expressly represented and warranted via the product certification "labels" affixed to subject products that such products were fully compliant with all safety standards and fit for the ordinary purpose for which such goods are used.

67.     The express representations and warranties were part of the basis of the bargain between the HVAC and Heater Manufacturers on the one hand, and the Plaintiffs and members of the Classes on the other.

68.     The HVAC and Heater Manufacturer Defendants and Certification Lab Defendants breached its express warranties because the Heaters that do not incorporate Fail-Safe Cutoffs and HVAC equipment with such heaters do not comply with the applicable safety standards and specifically violate a critical safety requirements, rendering such equipment defective and unreasonably dangerous and unfit for the ordinary purpose for which they are used.

69.     Plaintiffs and members of the Classes relied upon the Defendants' representation or warranty that the subject HVAC equipment or Heaters they would be supplied would be fully compliant with all requirements of the safety standards and safe for their intended and ordinary use.

70.     Any limitations in any warranties provided by Defendants are unconscionable or fail in their essential purpose.

71.     Plaintiffs and members of the Classes are entitled to the full remedies provided under the Uniform Commercial Code as adopted by Florida, Florida Statutes. §672 et al, as well as all other applicable remedies against the HVAC and Heater Manufacturer Defendants and Certification Lab Defendants.

## COUNT II
### Implied Warranty of Merchantability
### (On Behalf of Plaintiffs, the Nationwide Classes and Florida Subclasses)

72.     Plaintiffs re-allege and incorporate each and every allegation of paragraphs 1 through 63 as set forth above as if fully written herein.

73.     Plaintiffs bring this claim on behalf of the Nationwide Classes, or, in the alternative, on behalf of the Florida subclasses.

74.     The HVAC and Heater Manufacturer Defendants are merchants who sold heaters and HVAC equipment to Plaintiffs and the Classes for residential and commercial use.

75.     A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied in a contract for their sale when the seller is a merchant with respect to goods of that kind.

76.     The HVAC and Heater Manufacturer Defendants' implied warranty that the subject heaters and HVAC equipment were merchantable was part of the basis of the bargain between the HVAC and Heater Manufacturer Defendants on the one hand and the Plaintiffs and Classes on the other.

77.     The HVAC and Heater Manufacturer Defendants breached the implied warranty of merchantability because the subject heaters and equipment were not of merchantable quality or fit for their ordinary and intended use because they contained a defect at the time of sale that resulted in, and continues to result in, unreasonable danger from overheat fires exposing users and others to needless risks of personal injury and property damage when the product is used in a normal, foreseeable and customary way.

78.     The HVAC and Heater Manufacturer Defendants breached the implied warranty of merchantability because the subject heaters and equipment did not conform to the promises or

affirmations of fact mad on the product, container or label, to wit: product certification "labels" representing compliance with all safety standards.

79.     The defects at issue are latent defects.  Plaintiffs and Class members could not have known about the defects and dangers of the subject products.

80.     As a result of the Defendants' breach of the implied warranty of merchantability the Plaintiffs and Classes

81.     Plaintiffs and Class members sustained damages as a direct result of the breach of implied warranty of merchantability.  In particular, Plaintiff and Class members would not have purchased the Defendants' heaters and HVAC equipment had they known the truth about the defects.  Further, Plaintiffs and the Classes paid higher prices for the subject products than they would have paid for similar products that were not defective and dangerous.

82.     The exclusions and/or limitations on and implied warranties that may exist are unconscionable and/or fail their essential purpose.

83.     As a direct and proximate result of the HVAC and Heater Manufacturer Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class members have suffered damages in an amount to be determined at trial including, without limitation, the price premium paid for the subject defective products and such further damage to be proven at trial.

84.     Plaintiffs and members of the Classes are entitled to the full remedies provided under Uniform Commercial Code as adopted by Florida, Florida Statutes. §672 et al, as well as all other applicable remedies against the HVAC and Heater Manufacturer Defendants.

## COUNT III
### Implied Warranty of Fitness for a Particular Purpose
### (On Behalf of Plaintiffs, the Nationwide Classes and Florida Subclasses)

85.    Plaintiffs re-allege and incorporate each and every allegation of paragraphs 1 through 63 as set forth above as if fully written herein.

86.    Plaintiffs bring this claim on behalf of the Nationwide Classes, or, in the alternative, on behalf of the Florida subclasses.

87.     HVAC and Heater Manufacturer Defendants sold and promoted their Heaters and HVAC equipment, which they placed into the stream of commerce.  HVAC and Heater Manufacturer Defendants knew or had reason to know of the specific use for which the Heaters and HVAC equipment were purchased, and it impliedly warranted that the subject products were fit for their intended purpose of safely heating homes.

88.    Plaintiff and Class members reasonably relied upon the expertise, skill, judgment and knowledge of Defendants and upon their implied warranty that the subject products were fit for their intended purpose and use.

89.    Defendants knew or had reason to know that the Plaintiff and Class members were influenced to purchase the Defendants' products through Defendants' expertise, skill, judgment and knowledge in furnishing the products for their intended use.

90.    Through the conduct alleged herein, the HVAC and Heater Manufacturer Defendants have breached the implied warranty of fitness for a particular purpose.  The defectively designed heaters and HVAC equipment were not fit for the particular purpose for which they were purchased by the Plaintiffs and Class members to perform. The Plaintiff and Classes purchased the subject heaters and HVAC equipment for the particular purpose of being able to safely heat their homes. Defendants knew that the Plaintiff and Class members were

purchasing the subject heaters and HVAC equipment for this purpose and marketed the products for this particular purpose.

91.     Plaintiffs and Class members relied upon Defendants misrepresentations by purchasing the subject products.

92.     The subject heaters and HVAC equipment were not fit for their intended use because the design or manufacturing defects alleged herein render them unreasonably dangerous and incapable of safely providing heated air to Plaintiffs and Class members' homes during normal, foreseeable and intended use.

93.     Defendants actions as complained of herein breached their implied warranty that the subject products were fit for their intended use, in violation of the Uniform Commercial Code, Florida Statutes §672.315, as well as common law and statutory law of other states.

94.     Plaintiffs and Class members sustained damages as a direct result of the breach of implied warranty of fitness for a particular purpose.  In particular, Plaintiff and Class members would not have purchased the Defendants' heaters and HVAC equipment had they known the truth about the defects.  Further, Plaintiffs and the Classes paid higher prices for the subject products than they would have paid for similar products that were not defective and dangerous.

95.     Moreover, the exclusions and/or limitations on and implied warranties that may exist are unconscionable and/or fail their essential purpose.

96.     As a direct and proximate result of the HVAC and Heater Manufacturer Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs and Class members have suffered damages in an amount to be determined at trial including, without limitation, the price premium paid for the subject defective products and such further damage to be proven at trial.

97.     Plaintiffs and members of the Classes are entitled to the full remedies provided under Uniform Commercial Code as adopted by Florida, Florida Statutes. §672 et al, as well as all other applicable remedies against the HVAC and Heater Manufacturer Defendants.

## COUNT IV
### Florida Deceptive and Unfair Trade Practices Act
### §§501.201, *et seq*., Florida Statutes
### (On Behalf of Plaintiffs and Florida Subclasses)

98.     Plaintiffs re-allege and incorporate each and every allegation of paragraphs 1 through 63 as set forth above as if fully written herein.

99.     Plaintiffs bring this claim on behalf of the Florida subclasses.

100.     The HVAC and Heater Manufacturer Defendants are engaged in commerce in the State of Florida, as defined by §501.203(8), Florida Statutes, and is therefore subject to the provisions contained in §§501.201, *et seq*., Florida Statutes, the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

101.     Plaintiffs and members of the Florida Subclasses are "consumer(s)" as defined by §501.203(7), Florida Statutes, and as such are entitled to the protection of FDUTPA.

102.     In selling heaters and HVAC equipment in Florida, the HVAC and Heater Manufacturer Defendants were required to be honest in its dealings and not engage in any acts that had the effect of deceiving purchasers of the subject products.

103.     By reason of the conduct alleged herein, the HVAC and Heater Manufacturer Defendants  engaged in unfair and deceptive business practices in violation of FDUTPA, Fl. St. §§501.201, et seq. Specifically, the HVAC and Heater Manufacturer Defendants violated FDUTPA by affixing materially false product safety certification "labels" to the subject products distributed and sold in Florida. The product safety certification "labels" were materially false

because they falsely stated that the products were fully compliant with all safety standards when, in fact, the products were not compliant and specifically violated critical safety requirements rendering the subject products defective and unreasonably dangerous and unfit for their normal, foreseeable and intended use.

104.    As a result of the HVAC and Heater Manufacturer Defendants' violations of FDUTPA, Plaintiffs and the members of the Florida Subclasses have suffered substantial injury and have been aggrieved and are, thus, entitled to damages under FDUTPA.

105.    As redress for the HVAC and Heater Manufacturer Defendants' repeated violations of FDUTPA, Plaintiffs and members of the Florida Subclasses are entitled to, inter alia, damages and declaratory relief.

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Florida Subclasses respectfully request:

a.  Award Plaintiffs and the members of the Florida Subclasses damages pursuant to §501.211(2), Florida Statutes;

b.  Enter a declaratory judgment to the effect that the HVAC and Heater Manufacturer Defendants has engaged in unfair, unconscionable and deceptive business practices in violation of FDUTPA as set forth in§501.211(1), Florida Statutes; and

c.  Award Plaintiffs her reasonable attorneys' fees and costs incident to the bringing of this action pursuant to §501.211, Florida Statutes.

## COUNT V
## Unjust Enrichment
## (On Behalf of Plaintiffs, the Nationwide Classes and Florida Subclasses)

106.    Plaintiffs re-allege and incorporate each and every allegation of paragraphs 1 through 63 as set forth above as if fully written herein.

107.    Plaintiffs bring this claim on behalf of the Nationwide Classes, or, in the alternative, on behalf of the Florida subclasses.

108.    Plaintiffs and Class members have conferred a benefit upon the HVAC and Heater Manufacturer Defendants.   Namely, Plaintiff and Class members paid money for ownership of the Defendants' heaters and HVAC equipment.

109.    The HVAC and Heater Manufacturer Defendants have retained that benefit.

110.    The HVAC and Heater Manufacturer Defendants received and retained wrongful benefits as a result of the purchases made by Plaintiffs and Class members under circumstances that make it inequitable for Defendants to do so and, in so doing, have disregarded the rights of Plaintiffs and Class members.  Specifically, Defendants retained that benefit despite the fact that the Defendants' products were defective and unreasonably dangerous and not fit for the use intended.

111.    Plaintiffs and Class members purchased the Defendants products directly or from Defendants' agent, in part, because of Defendants' representations in the product safety certification "labels", advertisements, marketing and product claims and, as a result, a relationship between the parties has been created even where the Plaintiffs or Class members did not purchase the subject products directly from the Defendants.

112.    As set forth above, the HVAC and Heater Manufacturer Defendants misrepresented the products safety and compliance with safety standards through product safety

certification "labels" affixed to the subject products specifically designed to entice Plaintiffs, Class members, builders, contractors and others to buy Defendants products.

113.    Because the HVAC and Heater Manufacturer Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for their unjust enrichment, as Ordered by the Court.

**COUNT VI**
**Fraudulent Concealment**
**(On Behalf of Plaintiffs, the Nationwide Classes and Florida Subclasses)**

114.    Plaintiffs re-allege and incorporate each and every allegations of paragraphs 1 through 63 as set forth above as if fully written herein.

115.    Plaintiffs bring this claim on behalf of the Nationwide Classes, or, in the alternative, on behalf of the Florida subclasses.

116.    The HVAC and Heater Manufacturer Defendants knew or should have known that the heaters that did not incorporate Fail-Safe Cutoffs and HVAC equipment incorporating such unprotected heaters were defective in design, unreasonably dangerous, unfit for their ordinary and intended use and were not compliant with the safety standards and would not perform as represented by Defendants.

117.    The HVAC and Heater Manufacturer Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the subject products were defective and dangerous.

118.    The HVAC and Heater Manufacturer Defendants had exclusive knowledge of the defective and dangerous nature of the subject products at the time of sale.  The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence could

have discovered independently prior to purchase.

119.    The HVAC and Heater Manufacturer Defendants had the capacity to, and did, deceive the Plaintiffs and Class members into believing that the products they were purchasing were free from defects.

120.    The HVAC and Heater Manufacturer Defendants undertook active and ongoing steps to conceal the defect.  Plaintiffs are aware of nothing in the Defendants' advertising, publicity or marketing information disclosed the truth about the defect, despite Defendants awareness of the defects and the unreasonable dangers.

121.    The facts concealed and/or not disclosed by the HVAC and Heater Manufacturer Defendants to Plaintiffs and Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or pay the same price) for the subject products.

122.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the defective and unreasonably dangerous products.

123.    Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of the HVAC and Heater Manufacturer Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the defective and unreasonably dangerous heaters and HVAC equipment on the same terms if the true facts concerning the defects had been known; (b) they paid a price premium because they believed the products complied with the safety standards; (c) they paid a price premium because they believed the products would be free from defects; and (d) the subject product did not perform as promised.

124.    By reason of the foregoing, Plaintiffs and Class members suffered, and continue to suffer, financial damage and injury.

**COUNT VII**
**Declaratory Relief**
**28 U.S.C. §2201**
**(On Behalf of Plaintiffs, the Nationwide Classes and Florida Subclasses)**

125.    Plaintiffs re-allege and incorporate each and every allegation of paragraphs 1 through 63 as set forth above as if fully written herein.

126.    Plaintiffs bring this claim on behalf of the Nationwide Classes, or, in the alternative, on behalf of the Florida subclasses.

127.    There is an actual controversy between Plaintiffs and Classes on the one hand, and the HVAC and Heater Manufacturer Defendants' on the other, regarding the marketing and sale of the heaters that do not incorporate Fail-Safe Cutoffs and HVAC equipment that incorporates such unprotected heaters.

128.    Pursuant to 28 U.S.C. §2201, this Court may "declare the rights and legal relations of any party seeking such declaration, whether or not further relief is or could be sought."

129.    The HVAC and Heater Manufacturer Defendants have acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).  Plaintiffs seek declaratory relief, ruling that:

      a.   Electric unitary heaters that do not incorporate Fail-Safe Cutoffs are defective;

      b.   HVAC equipment that incorporate heaters that do not incorporate Fail-Safe Cutoffs are defective;

      c.   The HVAC and Heater Manufacturer Defendants must notify owners of the defective heaters and HVAC equipment of the defects;

28

d.  The HVAC and Heater Manufacturer Defendants must pay for repairs and damages;

e.  Certain provisions of the HVAC and Heater Manufacturer Defendants/ warranty are void as unconscionable;

f.  Any durational limitations on any applicable warranty are removed;

g.  Any limitation of damages or disclaimer or warranty by the HVAC and Heater Manufacturer Defendants with regard to the defective heaters and heating equipment are void.

## <u>REQUESTS FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, seek judgment against the Defendants as follows:

A.  For an order certifying the Classes and/or Florida Subclasses and/or issue class(es) under Rule 23 of the Federal Ruled of Civil Procedure and naming Plaintiffs as Class Representative and his attorneys as Class Counsel to represent the Class and Subclass members;

B.  For an order finding in favor of the Plaintiffs and the Classes on all counts asserted herein;

C.  For an Order awarding damages in an amount to be determined by the Court or jury;

D.  For prejudgment interest on all amounts awarded;

E.  For an order of restitution and all other forms of injunctive and/or equitable relief;

F.  For and order awarding Plaintiffs and Class reasonable attorneys' fees, expenses and costs of suit; and

G.   For all further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all claims so triable.


Dated:  December 29, 2016                    Respectfully submitted,


/s/Domingo C. Rodriguez, Esq.
Domingo C. Rodriguez, Esq.
Fla. Bar No. 394645
RODRIGUEZ LAW OFFICE, LLC
Domingo@rlomiami.com
Pleadings@rlomiami.com
2121 Ponce de Leon Blvd., Suite 430
Miami, Florida 33134
Tel: (305) 774-1477 ~ Fax: (305) 774-1075
Counsel for Plaintiffs